IN THE SUPREME COURT OF THE STATE OF MONTANA

No. AF 07-0157

_____

FILED

MAR 15 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

| | | |
|---|---|---|
| IN RE CHANGES TO THE MONTANA RULES | ) | |
| OF CIVIL PROCEDURE to encourage | ) | O R D E R |
| limited scope representation (LSR) in Montana. | ) | |

_____

In September of 2010, the Montana Supreme Court Equal Justice Task Force, the Montana Supreme Court Commission on Self-Represented Litigants, and the State Bar Access to Justice Committee petitioned the Court to adopt rule changes in order to encourage limited scope representation (LSR) by Montana attorneys, as one means of addressing the unmet legal needs of low- to moderate-income Montanans. For that purpose, changes were proposed to the Montana Rules of Civil Procedure and the Montana Rules of Professional Conduct.

We invited and received written public comment on the proposed rule changes. At the end of the comment period, we also heard public comment at several public meetings. At our public meeting on March 1, 2011, we voted to adopt most, but not all, of the changes proposed to the Montana Rules of Professional Conduct and the Montana Rules of Civil Procedure.

IT IS NOW ORDERED that the following language is added to the Montana Rules of Civil Procedure, as Rule 4.2 and Rule 4.3:

> **Rule 4.2  Limited Representation Permitted -- Process.**
> (a) In accordance with Rule 1.2(c) of the Montana Rules of Professional Conduct, an attorney may undertake to provide limited representation to a person involved in a court proceeding.
> (b) Providing limited representation of a person under these rules shall not constitute an entry of appearance by the attorney for purposes of Rule 5(b) and does not authorize or require the service or delivery of pleadings, papers, or other documents upon the attorney under Rule 5(b).
> (c) Representation of the person by the attorney at any proceeding before a judge or other judicial officer on behalf of the person constitutes an entry of appearance, except to the extent that a limited notice of appearance as provided

for under Rule 4.3 is filed and served prior to or simultaneous with the actual appearance. Service on an attorney who has made a limited appearance for a party shall be valid only in connection with the specific proceedings for which the attorney appeared, including any hearing or trial at which the attorney appeared and any subsequent motions or presentation of orders.
(d)  An attorney's violation of this Rule may subject the attorney to sanctions provided in Rule 11.

**Rule 4.3.  Notice of Limited Appearance and Withdrawal as Attorney.**
(a)  Notice of limited appearance.  If specifically so stated in a notice of limited appearance filed and served prior to or simultaneous with the proceeding, an attorney's role may be limited to one or more individual proceedings in the action.
(b)  At the conclusion of such proceedings the attorney's role terminates without the necessity of leave of court, upon the attorney filing notice of completion of limited appearance.

IT IS FURTHER ORDERED that Rule 11 of the Montana Rules of Civil Procedure is amended by the addition of subsection (b) shown below:

**Rule 11.  Signing of Pleadings, Motions, and other Papers -- Sanctions**
(a)  [existing rule]
(b)  An attorney may help to draft a pleading, motion, or document filed by the otherwise self-represented person, and the attorney need not sign that pleading, motion, or document.  The attorney in providing such drafting assistance may rely on the otherwise self-represented person's representation of facts, unless the attorney has reason to believe that such representations are false or materially insufficient, in which instance the attorney shall make an independent reasonable inquiry into the facts.

The above changes to the Montana Rules of Civil Procedure shall be effective on October 1, 2011.

This Order shall be published on the Montana Supreme Court website.  The Clerk is directed to provide copies of this Order to the Montana State Law Library, the State Bar of Montana, Court Services Director Beth McLaughlin, Thomson-Reuters, Chair of the State Bar Ethics Committee Michael Alterowitz, and the Montana Legislative Services Division.

2

The Clerk is further directed to provide copies of this Order to the Chairs of the Montana Supreme Court Equal Justice Task Force, the Montana Supreme Court Commission on Self-Represented Litigants, the State Bar of Montana Access to Justice Committee, and the Advisory Commission on Rules of Civil and Appellate Procedure.

DATED this _15_ day of March, 2011.

_____
Chief Justice

_____

_____

_____

_____
Justices

3

Justice Beth Baker, concurring.

I concur with the Court's Order adopting rules to encourage limited scope representation (LSR) by Montana attorneys. I write separately to address the concerns raised by some of the comments from members of the Bar and the Opinion of the State Bar Ethics Committee, and reflected in the Dissent.

Nothing in the amendment to M. R. Civ. P. 11 changes the fact that all lawyers are bound by and subject to the Rules of Professional Conduct. By assisting an individual in the preparation of legal documents, a lawyer is not given carte blanche to mislead the courts or other parties, counsel a client to file invalid pleadings, advance claims with little or no relevance or merit, or practice in areas in which the lawyer has insufficient competence "reasonably necessary for the representation" as required by M. R. Prof. C. 1.1. And a self-represented party remains bound by Rule 11 and subject to sanctions if the rule is violated.

"Limited scope" does not mean "limited competence," "limited professionalism," or "limited ethics." It does, however, mean that more Montanans may have the opportunity to have some meaningful advice and input as they attempt to protect their legal rights in the courts of this State. According to the most recent annual report of the Montana Office of Disciplinary Counsel, only about one in one hundred Montana lawyers was subject to any form of discipline last year, consistent with the past several years' data. More than half of all complaints against lawyers are filed by their own clients, who will retain access to that remedy whether or not there is an agreement for limited scope representation and whether or not their attorney signs the document filed in court. Given the high standards of practice generally followed by Montana attorneys, I do not share the fear that encouraging lawyers to help people with their legal documents will generate a sudden onslaught of substandard legal work.

In light of this relatively slight risk, the amendments to Rule 11 offer a workable standard. The proposal offered by the Dissent, on the other hand, is unworkable as it does not provide a bright line standard. For example, if an attorney drafts one or two

4

paragraphs in a document, or reviews and edits a client's draft, or prepares language that the client thereafter edits and inserts into a document, has the attorney participated in "drafting" the document within the meaning of the rule? Without a clear standard, the goal of encouraging attorneys to provide a needed service will be chilled by having a rule that is difficult to apply in practice and risks defeating the purpose of limited representation.

In my view, the courts, court staff, opposing parties and their lawyers will benefit from having better documents filed by self-represented litigants, and from having parties who are better prepared when they appear in court on their own behalf—as they will do with or without these rule changes and as is their right. On balance, even limited assistance provided by lawyers to self-represented litigants will help the system work more effectively for all participants. Although the Ethics Committee expresses concern that the rule will promote a two-tiered system where those unable to afford a lawyer are given a qualitatively lesser form of legal representation, the Ethics Opinion fails to appreciate that the real choice is between limited representation and no representation at all.

The Ethics Opinion also fails to consider the ethical obligation of all lawyers to provide pro bono publico legal services under Rule 6.1. While the Ethics Committee believes that the existing rules accommodate the goal of meeting unmet legal needs, the fact is that, despite decades of work by members of the legal community to increase availability of legal resources and services, a significant portion of our citizens' legal needs still go unmet under the current rules. The amendments adopted by the Court today will encourage a new vision for innovation and cooperation that will give more lawyers a way to meet their ethical obligations and more Montanans the opportunity to have meaningful access to their courts.

_____
                                Justice

Chief Justice Mike McGrath and Justice Brian Morris join in the concurring Opinion of Justice Beth Baker.

_____
                                          Chief Justice

_____
                                          Justice

6

Justice James C. Nelson, concurring and dissenting.

I concur with the Court's Order except as to the amendment to M. R. Civ. P. 11. As to that amendment, respectfully, I cannot agree. The Court's adoption of limited scope representation (LSR) rules is a legitimate way to allow—and encourage—practicing attorneys to provide more and better legal services to the ever-growing numbers of those who cannot afford professional legal representation. I support that concept.

However, public comment, the Montana State Bar Ethics Committee's Opinion No. 101216, and State Bar President Joe Sullivan's President's Message in the November 2010 issue of the *Montana Lawyer* (Vol. 36, No. 2), have persuaded me that amending M. R. Civ. P. 11 in the manner we have is a mistake. The amendment which we adopt to M. R. Civ. P. 11 today allows attorneys to draft anonymously, or to "ghostwrite," pleadings, motions and documents for self-represented litigants to sign and then use as the litigant's own work product.

The State Bar and some lawyers in the practicing Bar have raised bona fide concerns that ghostwriting may, among other things, protect attorneys who do substandard work by abrogating accountability; encourage "recreational" and otherwise invalid filings; legitimize the trend toward a reduced and qualitatively lesser form of legal representation; mislead the courts and other parties; encourage lawyers to practice in areas of the law for which they have little or no experience; require the opposing party to respond to or defend against arguments and claims that, in the context of the entire case, have little or no relevance or merit; facilitate out-of-state attorneys to practice law in Montana without being licensed to do so; facilitate disbarred or suspended lawyers to practice law; and encourage lawyers to establish an LSR "practice." Finally, self-represented litigants are typically held to a lesser standard than parties represented by counsel. A self-represented litigant with a ghostwritten motion, brief or complaint gets the best of both worlds—an attorney-prepared document and judicial leeway. While LSR may benefit those in need of professional legal representation, allowing attorneys to

7

ghostwrite presents serious risks to the profession, to the ethical practice of law, and to our notions of transparency and basic fairness.

Accordingly, to mitigate these concerns, I would require, within the amended language to M. R. Civ. P. 11, that when an attorney drafts a pleading, motion or document for the signature of a self-represented litigant, that the attorney be required to state on the writing that he or she has drafted it pursuant to the LSR rules and to provide his or her name, business address, business phone number and State Bar license number.

Finally, I appreciate and understand Justice Baker's zeal for LSR, and I am hopeful that it succeeds to her high expectations. I do not believe (and did not say) that LSR will generate a "sudden onslaught of substandard legal work." I am concerned, however, that the way LSR is being "marketed" to the Bar may well encourage those attorneys who have few clients, little or no experience, and little or no mentoring to engage in an "LSR practice" as a means of building a client base and as a means of gaining experience anonymously.

Until recently, I was unaware of this Court's Commission on Self-Represented Litigants and Pro Bono Program sponsorship of a CLE on October 15, 2010, in Billings. A "nationally recognized expert" was engaged to give the workshop. The title of the CLE was "Got Clients? How to Grow Your Law Practice Using Limited Scope Representation." The flyer promoted the CLE as a means to "expand[] your law practice, market[] your practice and increase[] your client base by tapping into a new pool of 'pay as you go' clients . . . ." Why attend? Again, the flyer, among other things, promotes LSR as a "how to" manual to "help expand your client base during these tough economic times" as well as to "make unrepresented clients your clients" and to teach "when and when not to do LSR safely and profitably."

My understanding of the purpose of unbundling legal services is to encourage competent and experienced attorneys—including those in large firms—to provide pro bono services on a piecemeal basis (i.e., without having to take on responsibility for a whole case) to those who cannot afford to pay for the legal services rendered. These are laudable goals, intended for the benefit of *clients* who need assistance. I did not envision

8

LSR as being implemented or marketed for the benefit of *lawyers*. That LSR is now being promoted under the name of this Court as a means to expand one's apparently flagging law practice by tapping into a pool of "pay as you go" clients is a disquieting spin on the program.

The marketing of LSR as a new fee-generating vehicle for lawyers underscores my concern that we may be losing sight of whose interests are primary. To ensure that the client receives competent service from attorneys—which is our common goal—we should require that those who perform the work are willing to stand behind it. This should be neither difficult nor chilling for the competent lawyer to do. All I am suggesting is that attorneys who provide these services be held accountable for their work product by stating on the document that they prepared it. If we need a "bright line" rule specifying how the requirement be fulfilled, I am fully confident that this Court could draft such a rule.

I concur with the Court's Order except as to the amendment to M. R. Civ. P. 11.

_____
                              Justice


Justice Patricia O. Cotter joins the Concurrence and Dissent of Justice James C. Nelson.

_____
                              Justice